AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
SEP 1 6 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  19MJ3987
One LG Cellular Telephone )
Model: K30 )
IMEI Number 355380098784983 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit of Special Agent Russell Slingerland Jr., Homeland Security Investigations

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

S.A. Russell Slingerland, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/16/19

_____
Judge's signature

City and state: San Diego, CA     Hon. William V. Gallo, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    LG Cellular Telephone
    Model: K30
    IMEI Number 355380098784983
    (**Target Device**)

**Target Device** is currently in the possession of the Department of Homeland Security, 2255 Niels Bohr Court, San Diego, California, 92154, in the Southern District of California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 25, 2019 to August 26, 2019:

a. tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of 21 U.S.C. §§ 952 and 960.**

# AFFIDAVIT

I, Russell Slingerland Jr., Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as more particularly described in Attachment B:

> LG Cellular Telephone
> Model: K30
> IMEI Number 355380098784983
> (**"Target Device"**)

This search supports an investigation and prosecution of Stephanie OVIEDO ("OVIEDO") for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. Customs and Border Protection Officers ("CBPO") seized the **Target Device** from OVIEDO at the time of their arrest for importation of methamphetamine into the U.S. from Mexico on August 26, 2019. The **Target Device** is currently in the possession of DHS and stored in the seized property vault at 2255 Niels Bohr Court, San Diego, California, 92154, in the Southern District of California.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made

for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.  I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been employed by HSI since December 2016. I am currently assigned to the Deputy Special Agent in Charge (DSAC), San Ysidro Office, Contraband Smuggling Group V, and my duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Controlled Substance Act. I have completed training at the Federal Law Enforcement Training Center, comprising basic criminal investigator training and HSI Special Agent Training. I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations.

6.  In the course of my duties at HSI, I have worked as the case agent, directing specific drug-related investigations. I have also worked as a surveillance agent, where I observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs. Additionally, I have participated in the execution of search warrants related to drug offenses. I have made numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants, witnesses and informants relative to the illegal trafficking of controlled substances. Through these experiences, I have gained a working knowledge and insight into the operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico through the San Diego international ports of entry.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Those involved in conspiracies to smuggle and traffic narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because

they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f.    Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.    The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education,

and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12.    On August 25, 2019, at approximately 11:00 p.m., OVIEDO, a United States citizen, applied for permission to enter into the United States from Mexico through the San Ysidro, California, Port of Entry ("POE") in the Southern District of California. OVIEDO was the passenger of a green 2008 Jeep Laredo bearing California

license plates ("the vehicle"). Jimmy Anthony FUENTES, OVIEDO's boyfriend, was the driver of the vehicle.

13. CBPO Victor Tovar was performing duties as part of the Anti-Terrorism and Contraband Enforcement Team in the pre-primary inspection area. CBPO Tovar did an inspection of the undercarriage of the vehicle with an inspection mirror and noticed black smudges on the fuel tank, as well as fresh tooling marks on screws. This raised suspicion for CBPO Tovar, who next asked the driver, FUENTES, where he was going. FUENTES replied they were going to Compton. CBPO Tovar asked FUENTES if any repair work had been done to the vehicle, to which FUENTES replied no. FUENTES further explained they had owned the vehicle for approximately three weeks. CBPO Tovar requested identification documents from FUENTES and OVIEDO, and was told by them that the vehicle had been broken in to, and all of their identification documents had been stolen. CBPO Tovar received two negative Customs declarations during this conversation as well. During CBPO Tovar's pre-primary inspection, Canine Enforcement Officer ("CEO") Lemuel Boswell arrived to assist CBPO Tovar. CEO Boswell's assigned Narcotics and Human Detection Dog alerted to the rear of the vehicle and the undercarriage. CEO Boswell notified CBPO Tovar of the alert. CBPO Tovar utilized a portable density meter to scan the cargo hatch of the vehicle. The reading was unusually high. CBPO Tovar requested the primary inspection officer refer the vehicle through to secondary for further inspection.

14. In secondary, CBPO Kirby McIntosh utilized a Z-Portal to take X-ray images of the vehicle. CBPO McIntosh detected anomalies in the fuel tank of the vehicle. He relayed his findings, and CBPO Robert Allison was assigned to do a thorough search of the vehicle. CBPO Allison removed forty-eight vacuum-sealed packages from the vehicle's fuel tank, and twelve packages from the vehicle's cargo hatch. The sixty packages weighed approximately 28.88 kilograms and field-tested positive for methamphetamine.

15. FUENTES and OVIEDO were both arrested. FUENTES waived his *Miranda* Rights and agreed to speak with agents. FUENTES stated he needed to earn money and believed he was doing a "dry run" to build up legitimate crossings with the vehicle prior to smuggling any controlled substances. FUENTES stated he met with members of a criminal organization while in Mexico and relied upon OVIEDO to do the majority of the communications, due to him not knowing Spanish fluently. OVIEDO waived her *Miranda* Rights and agreed to speak with agents. OVIEDO claimed she did not have any knowledge of any controlled substances in the vehicle, and stated she had gone to Mexico to discuss working for a criminal organization in the capacity of smuggling humans through the Port of Entry. FUENTES and OVIEDO were later taken to MCC San Diego to await judicial proceedings, where OVIEDO was found to have a package of methamphetamine concealed within her vagina.

16. Customs and Border Protection Officers seized the **Target Device** from OVIEDO at the time of her arrest. Upon arriving at the Port of Entry, HSI Agents identified a DHS evidence bag as property removed from the vehicle, FUENTES, and OVIEDO, which contained personal property and the **Target Device**.

17. On August 26, 2019, FUENTES and OVIEDO were charged with the importation of a controlled substance, in violation of Title 21, United States Code, Sections 952 and 960 in case number 19-MJ-3507-AGS.

18. I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device,** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of OVIEDO, such as telephone numbers, made and received calls,

contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.

19. Based on my training and experience along with other law enforcement officers' training and experience, I know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience and in the professional experience of other agents with whom I have spoken, this requires planning and coordination in the weeks and often months prior to the event. For example, drug trafficking organizations (DTOs) recruit, evaluate, and supply load drivers with vehicles and phones, and drug smugglers are often asked to cross a vehicle several times to establish a pattern. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s). Therefore, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on May 25, 2019, up to and including August 26, 2019 (the day after FUENTES and OVIEDO arrived at the POE given that they arrived at the POE at approximately 11:00 p.m. on August 25, 2019).

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that

reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the **Target Device** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

24. Other than as described above, the United States has not attempted to obtain this information by other means.

**CONCLUSION**

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that OVIEDO used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952 and 960.

26.     Because the **Target Device** was promptly seized during the investigation of OVIEDO's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by OVIEDO continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from May 25, 2019 to August 26, 2019.

27.     WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Russell Slingerland Jr.
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this __16__ day of September, 2019.

_____
HONORABLE WILLIAM V. GALLO
United States Magistrate Judge

10